## Archer v. Emler.

**May 6, 1949.**

Woodward, Hobson & Fulton for appellant.

Robert L. Meisburg, Jr., and C. Raymond Emler for appellee.

Opinion of the Court by Judge Rees—Affirming.

Edgar W. Archer owned a large tract of land in Jefferson County which he desired to subdivide. On February 12, 1946, he employed by written contract Oreskovich & Company, a partnership composed of Peter J. Oreskovich and C. Raymond Emler, to furnish him certain engineering services. Paragraph I (a) of the contract provided:

"The Company shall furnish to the Customer upon the Customer's written order all engineering services required for the presentation of the preliminary or sketched plan as required by the Subdivision Regulations for the Unincorporated Areas of Jefferson County, Kentucky, as set forth by the Louisville and Jefferson County Planning and Zoning Comm'ssion, and in effect as of the date of the signing of this contract by the parties thereto. The Company shall furnish to the customer upon the Customer's written order all engineering services required for the presentation of the construction plan as required by the Subdivision Regulations for the Unincorporated Areas of Jefferson County, Kentucky, as set forth by the Louisville and Jefferson County Planning and Zoning Commission, and in effect as of the date of the signing of his contract by the parties thereto.

"The Company shall furnish to the Customer upon the Customer's written order all engineering services required for the presentation of the final or record plat as required by the Subdivision Regulations for the Unincorporated Areas of Jefferson County, Kentucky, as set forth by the Louisville and Jefferson County Planning and Zoning Commission, and in effect as of the date of the signing of this contract by the parties thereto.

"It is the intention of both parties hereto that the services covered under this section includes the laying out on the ground of all streets with the establishment of grades for said streets. It is also the intention of both parties hereto that the services under this section includes the locating and staking out of individual lots herein, but the laying out of the foundations shall be a separate item as set out in Paragraph 1 (c) herein and shall be paid for under the rates as set out in Paragraph

3 (c) herein and under the general terms of this contract."

Paragraph III (a) provided:

"The Customer shall pay a fee to the Company for services performed under I (a) herein, a sum of money equivalent to Twelve ($12.50) and 50/100 Dollars for each lot in the Subdivision."

It will be noted that paragraph I (a) called for three separate and distinct services: (1) All engineering services required for the presentation of the preliminary or sketched plan, (2) all engineering services required for the presentation of the construction plan, and (3) all engineering services required for the presentation of the final or record plat, all to be as required by the subdivision regulations for the unincorporated areas of Jefferson County as set forth by the Louisville & Jefferson County Planning & Zoning Commission, and in effect as of the date of the contract. Paragraph II of the contract provided that the Company should present to the customer on the first of each and every calendar month a statement of all services rendered under the terms of the contract together with the payments due thereon, and that such payments should become due and payable by the customer on or before the tenth day of the month.

On April 1, 1946, Oreskovich & Company presented to Archer a statement for services rendered to that date for $1,300. On April 16, 1946, the partnership was dissolved, and in the division of the assets this account was assigned to C. Raymond Emler. On April 20, 1946, Archer pa'd to Emler $600. Thereafter several statements of the account were sent to Archer, but he refused to pay the balance and on March 19, 1947, Emler brought this action against Archer on the account, and upon the trial of the case the jury returned a verdict for the plaintiff in the sum of $700. Each party moved for a peremptory instruction in his favor at the conclusion of all the evidence, and both mot'ons were overruled. It is argued on this appeal that appellant was entitled to a peremptory instruction because it was clear from the undisputed testimony that Oreskovich & Company did not furnish all the engineering services requ'red for the presentation of the preliminary or sketched plan as

required by the contract, and that the second paragraph of Instruction No. 1 is erroneous.

The engineering company prepared the preliminary plan and delivered it to Archer who presented it to the Louisville & Jefferson County Planning & Zoning Commission on or about April 1, 1946. On May 1 the secretary of the Planning & Zoning Commission wrote to Archer informing him that the Commission, at a meeting held on April 26, 1946, had denied his request for approval of the preliminary plan for two reasons: (1) It did not provide for a minimum right of way of 90 feet in width through the property; and (2) it did not conform to the regulation adopted by the Jefferson County Fiscal Court on April 17, 1946, requiring that areas which are subject to frequent or periodic inundation be shown on the preliminary or sketched plan. Mr. Emler testified that numerous consultations with the Zoning Commission were had in an effort to reach an agreement on certain features to be incorporated in the preliminary plan for the proposed subdivision. The principal bone of contention was the right of way through the property along Gardner Lane. The Commission insisted that the right of way should have a minimum width of 90 feet because it was then intended that Gardner Lane should become a part of the proposed Inner Belt Highway. Archer strenuously objected to granting such right of way. The engineering company suggested to Archer that it prepare and present to the Commission a definite plan according to his and the engineering company's ideas, and this was done with Archer's approval. Emler also testified that the areas subject to periodic inundation were not colored or shaded on the blueprint furnished the Commission, but the contour map which was furnished showed the various elevations. The shading of the blueprint was omitted at Archer's direction. When Archer testified he failed to deny any of Emler's statements relative to the omission from the preliminary plan of the provision for the Inner Belt Highway or the shading of the inundated area. If the preliminary plan presented by the engineering company was deficient in these two respects in that it did not conform to the subdivision regulations then in effect, the deficiency, according to the uncontradicted evidence, was caused by Archer and at his direction.

Much is said in appellant's brief concerning a third reason for the Zoning Commission's failure to approve the preliminary plan submitted to it, and that is the boundary survey had an error in closing of 17 feet over the area of approximately 10,000 feet. The Commission in its letter of May 1, 1946, did not assign this as a reason for rejecting the plan. Mr. Friend H. Lodge, secretary of the Louisville & Jefferson County Planning & Zoning Commission, introduced as a witness by appellant, testified that the Commission rejected the preliminary plan submitted to it for the two reasons assigned in its letter of May 1, 1946, but the main factor was the failure of the plan to provide for a sufficient right of way for the proposed Inner Belt Highway. He stated that appellant argued with the Commission concerning this right of way, and finally on May 18, 1947, the Commission adopted a resolution approving the plan for Senaca Village, section 2, on condition that an additional 30 feet be added on the southern side of the present 30-foot dedication of Rebel Road. The preliminary plan referred to in the resolution had been prepared by another firm of engineers employed by appellant in the summer of 1946. It is clear that the error of closure had no bearing on the Zoning Commission's refusal to approve the plan submitted to it. The preliminary plan was based upon a transit and stadia survey recognized to be satisfactory for such plan. It was contemplated that a transit and chain survey would be made for the next step, the presentation of the construction plan, where absolute accuracy is required. It is not claimed that the charge for services rendered up to April 1, 1946, is not reasonable and proper if the preparation of the preliminary plan was in accordance with the contract.

A careful reading of the record convinces us that appellant wholly failed to show any breach of the contract by the engineering company, and that appellee was entitled to a directed verdict in his favor at the conclusion of all the evidence. This being true, it is unnecessary to consider the alleged error in the instruction.

Judgment is affirmed.